**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

PRECIOUS ALLEN, *et al.*,

        Plaintiffs,

    v.

JAY CLARK, *et al.*,

        Defendants.

Case No.: 1:13cv326

Judge Michael R. Barrett

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of Officer Shawn George and the City of Cincinnati ("City Defendants") (Doc. 6) and the Motion to Dismiss of Defendants Sharon Johnson, Cincinnati Board of Education and Withrow High School ("School Defendants") (Doc. 7).[1]  Plaintiffs Precious Allen, individually and as the mother of CB, and Dawn Brunner have filed a joint response in opposition to the motions to dismiss (Doc. 8), and the City Defendants and the School Defendants have filed their respective replies (Doc. 9; Doc. 10).  This matter is now ripe for review.

## I.    BACKGROUND

The basic facts, construed in the light most favorable to Plaintiffs, are as follow.  On February 7, 2013, Precious Allen, Dawn Brunner, and CB, a minor, entered Withrow High School to withdraw CB from the school due to CB being bullied by another student, BW.  (Doc. 1, ¶ 37).  When Allen, Brunner, and CB arrived at the school, a student opened the door for them, and they proceeded to CB's classroom to obtain CB's belongings.  (Id., ¶¶ 37-43).  After entering the classroom, a confrontation occurred among Allen, CB, and the alleged bully, BW.

---

[1] The other named defendants in the case are BW, John and Jane Does 1-10, Jay Clark and Kasey Eaves.  (Doc. 1). BW has not appeared in this case.  Jay Clark and Kasey Eaves have been voluntarily dismissed from the case.  (Doc. 3; Doc. 4).

(Id., ¶¶ 50-61).  Eyewitnesses indicated that BW called Allen names and "mugged" Allen.  (Id., ¶¶ 56-57).  Additional eyewitnesses indicated that Allen was trying to break up the fight.  (Id., ¶ 59-61).  After the altercation had been broken up, Allen and CB were standing in the hallway when BW broke through the security and charged in the direction of Allen and CB.  (Id., ¶ 62).  Security was, however, able to stop BW before she reached Allen and CB.  (Id., ¶ 63).

Officer Shawn George, an officer employed by the Cincinnati Police Department as security for Withrow High School, interrogated Allen and CB.  (Id., ¶¶ 9, 64).  Officer George and other administrators from Withrow also viewed the security videotape of the hallway attack. (Id., ¶ 82).  Officer George, however, otherwise allegedly performed an incomplete investigation. (Id., ¶ 65).

As a result of the altercation, Allen was charged with Aggravated Trespassing and Felonious Assault.  (Id., ¶ 67).  CB was charged with Felonious Assault, Assault, and Aggravated Trespassing.  (Id., ¶ 68).  Brunner was charged with Criminal Trespassing.  (Id., ¶¶ 69).  BW was not charged with any crime.  (Id., ¶ 71).  In connection with those charges, Allen, Brunner and CB asked Cincinnati Public Schools ("CPS") to produce video footage from the cameras in and outside Withrow that contained Allen, Brunner, and CB.  (Id., ¶ 72).  Withrow Principal Sharon Johnson attempted to obtain the video footage.  (Id., ¶¶ 76-77).  During the process of trying to obtain the video footage, Greg Baker, the CPS employee who installs and maintains the security systems, learned that the video footage from the hallway had been viewed at several computer work stations at Withrow on the day of the incident but determined that he was unable to review video from February 4, 2013 through February 7, 2013 but was not aware of any way to delete it from the hard drive.  (Id., ¶¶ 73, 79-80).  Officer George and

administrators for CPS admitted to the media that they had watched the video footage.  (Id., ¶ 82).

On February 19, 2013, CPS received a subpoena for the video footage.  (Id., ¶ 85).  CPS responded that it only had video footage of the three individuals entering the building on February 7, 2013.  (Id., ¶ 86).  It later recovered an additional segment of the video from the computer workstation where the video had previously been viewed.  (Id., ¶¶ 88, 93).  The portion of the video showing the incident in the hallway was not recovered.  (Id., ¶ 96).  According to Plaintiffs, that unproduced portion of the video would show BW was the aggressor towards CB and Allen.  (Id., ¶ 94).  "All witness testimony, as well as the Plaintiffs' testimony, verify this contention."  (Id., ¶ 95).

The incident at Withrow made media headlines.  The media has portrayed Allen, Brunner, and CB as trespassers and reported they entered the school with intentions to beat up BW.  (Id., ¶¶ 97-103).  Several of the news stories identify the source of information as or attribute statements to the "police" or "Cincinnati Police Chief James Craig."  (Id., ¶¶ 99-103).

Ultimately, several of the charges against Plaintiffs resulted in convictions.  Specifically, Allen was convicted of Felonious Assault by a jury, and Brunner was convicted of Criminal Trespassing by the court.  (Id., ¶ 156; Doc. 6, Ex. B).[2]  No information has been provided about the status of the charges against CB.

## II.  LEGAL STANDARD

All Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is

---

[2] The City Defendants attached the public record of the charges and jury findings as exhibits to their Motion to Dismiss.  (Doc. 6).  The Court may consider public records in ruling on a motion to dismiss without converting the motion into one for summary judgment.  *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997);  *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 87 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)).

plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). In determining whether the plausibility standard is satisfied, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Nevertheless, a court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III. CLAIMS AGAINST OFFICER GEORGE AND THE CITY OF CINCINNATI

Plaintiffs assert claims against Officer George[3] and the City of Cincinnati for destruction of evidence in violation of 42 U.S.C. § 1983 (Count I), libel and slander (Count III), intentional

---

[3] Plaintiffs' Complaint does not specify whether Officer George is being sued in his official or individual capacity, and the burden is on Plaintiff to identify the capacity in which Officer George is sued. *See Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) (Fed. R. Civ. P. 9 requires plaintiffs to specify the capacity of the party sued in order to show the jurisdiction of the court); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) (where plaintiff includes defendant's official title in the caption of the complaint, the defendant is not on notice he is being sued in individual capacity). While the Complaint identifies George as "Officer" and lists the address of the Cincinnati Police Department for Officer George, the City Defendants argue that Officer George is entitled to qualified immunity assuming he was sued in his individual capacity. *See Cagle v. Gilley*, 957 F.2d 1347, 1350 (6th Cir. 1992). Neither party specifically addresses this issue in their briefings.

interference with prospective economic advantage (Count IV), and conspiracy under 42 U.S.C. § 1983 (Count VII). (Doc. 1).[4] All of the claims are for damages; there is no indication in the Complaint that Plaintiffs seek either injunctive or declaratory relief. (*See* Doc. 1). The City Defendants move for dismissal on all claims against them.

A. **Count I (Destruction of Evidence) and Count VII (Conspiracy)**

The City Defendants assert three grounds upon which they contend Counts I and VII should be dismissed. Having reviewed the arguments, the Court agrees that Count I and Count VII should be dismissed against the City Defendants for each of the three reasons identified.

1. **Ground 1: Qualified Immunity of Officer George**

The City Defendants contend that Count I and Count VII should be dismissed against Officer George because he is entitled to qualified immunity. (Doc. 6, pp. 3-5). They argue that the only allegations against Officer George are that he interrogated Allen and CB at school, performed an incomplete investigation, filed a complaint against Brunner, and watched a video of the hallway outside the classroom and told the media he did so. (Doc. 6, p. 5).[5] They contend that those allegations are insufficient to serve as the basis of a civil rights violation. (Id.) Without a civil rights violation, neither claim against Officer George can stand.[6]

Rather than explaining why those allegations are sufficient to serve as the basis for a civil rights violation, Plaintiffs argue that specific facts are not necessary under *Twombly*. (Doc. 8, pp. 3-4).[7]

---

[4] Count VII is mislabeled, as it actually is Count VI. Nevertheless, to remain consistent with the Complaint, the Court refers to it throughout as Count VII.

[5] The City Defendants concede Officer George also filed a complaint against Allen.

[6] Both Count I and Count VII are grounded in allegations of constitutional violations under 42 U.S.C. § 1983.

[7] The quote for which Plaintiffs cite *Twombly* is not found within the *Twombly* decision, although *Twombly* does mention the Rule 8 "notice pleading" standard, but indicates the plaintiff still must allege enough facts to state a claim for relief that is plausible on its face. Further, Plaintiffs' statement that a motion to dismiss is properly

The City Defendants reply that Plaintiffs still have failed to satisfy their burden, and thus, Officer George should be granted qualified immunity.  (Doc. 9, p. 2).

The Sixth Circuit has established a three-step test for evaluating qualified immunity defenses.  *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  First, it is necessary to determine whether the plaintiff has shown a violation of a constitutionally protected right.  *Id.* Second, it is necessary to consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.  *Id.*  Third, it is necessary to determine whether the plaintiff "has alleged sufficient facts, and supported the allegations by sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."  *Id.*  If the plaintiff fails to meet any of the three elements, qualified immunity must be granted.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).  The "immunity questions should be resolved as early in the litigation as possible" and "Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."  *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009); *see also Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (once qualified immunity is raised, "it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity"); *Reilly v. Vadlamudi*, 680 F.3d 617, 628 (6th Cir. 2012) (noting that the "purpose of qualified immunity is to ensure that insubstantial claims against government officials are resolved at the earliest possible stage in litigation" and that "district courts in some cases will be able to

---

considered only "where a plaintiff's complaint is 'unintelligab[le] (sic),' not where a complaint suffers for lack of detail" was made in case outside the Sixth Circuit in the context of a motion for a more definite statement rather than a motion to dismiss.  (Doc. 8, p. 4) (quoting *Epos Tech. Ltd. v. Pegasus Techs., Ltd.*, 636 F. Supp. 2d 57, 63 (D.D.C. 2009)).  As for the citation to *Clay v. City of Memphis*, 965 F.3d 531, 538-39, 541, 548 (6th Cir. 2012), it is consistent with *Twombly* and merely reiterates that the plaintiff's version, not the defendant's version, of facts must be credited.

establish entitlement to qualified immunity . . . even before discovery") (internal quotations omitted).

While the arguments set forth in Plaintiffs' response brief fall woefully short of even suggesting a constitutional violation occurred that would deprive Officer George of qualified immunity, the Court considers the City Defendants' arguments in light of the Complaint, construing the facts alleged in the light most favorable to Plaintiffs. In doing so, the Court construes Plaintiffs' Complaint as alleging that their due process rights were violated by the failure of the City Defendants to preserve or otherwise make available video footage from the hallway from the day of the incident in question.[8]

Pursuant to Supreme Court precedent, a plaintiff's due process rights may indeed be violated where the police fail to preserve evidence. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988); *California v. Trombetta*, 467 U.S. 479, 488-89 (1984). Yet, not all failures to preserve evidence rise to the level of a due process violation. To rise to the level of a due process violation, the evidence at issue first must be either "materially exculpatory" or "potential useful" to the defense. *Youngblood*, 488 U.S. at 57-58; *Trombetta*, 467 U.S. at 488-49. The type of evidence at issue dictates the standard for determining whether a failure to preserve the evidence rose to the level of a due process violation. *Youngblood*, 488 U.S. at 57-58; *Trombetta*, 467 U.S. at 488-49. The failure to preserve evidence that is "materially exculpatory" rises to the level of a due process violation if it (a) possesses "an exculpatory value that was apparent before the evidence was destroyed," and (b) is of "such a nature that the defendant would be unable to

---

[8] More specifically, Plaintiffs allege in Count I that they had a "Fourteenth Amendment right to access the exculpatory material contained on the security footage that was destroyed while in the custody of the Defendants." (Doc. 1, pp. 20-21). Similarly, Plaintiffs allege in Count VII that Defendants deprived them "of their right to due process under the Fourteenth Amendment" by conspiring to convict Plaintiffs and did so by, among other things, "intentionally deleting surveillance footage or otherwise making the footage unavailable for use in the defense of Plaintiffs' criminal charges[.]" (Doc. 1, p. 24).

obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. In contrast, the failure to preserve "potentially useful" evidence rises to the level of a due process violation only when the plaintiff is able to show (a) bad faith on the part of the police and (b) that comparable evidence could not be obtained by other reasonably available means. *Youngblood*, 488 U.S. at 58; *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001). When, however, "the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established" for the purposes of showing a due process violation based upon the failure to preserve "potentially useful" evidence. *Monzo v. Edwards*, 281 F.3d 568, 580 (6th Cir. 2002). These standards have been applied in the context of claims brought under Section 1983. *Moldowan v. City of Warren*, 578 F.3d 351, 389 (6th Cir. 2009).

Applying those standards to the present case, the Court concludes that Plaintiffs' allegations do not plausibly show a due process violation by Officer George in regards to the failure to preserve the video footage. As an initial matter, the City Defendants do not challenge whether the video footage is materially exculpatory or potentially useful. In any event, Plaintiffs have alleged that the video footage was exculpatory or at least potentially useful to Plaintiffs' defense in the underlying criminal case. Specifically, Plaintiffs allege that the "unproduced video, which the police and Withrow administration viewed, would show the bully (BW) to be the aggressor towards CB and Precious Allen." (Doc. 1, ¶ 94). They further contend that the evidence is "critical and necessary evidence" for the defense, "would play an important role in the Plaintiffs' defenses," and was either "materially exculpable or potentially useful and destroyed in bad faith." (Doc. 1, pp. 14, 21 ¶¶ 157, 166-68). At this time, the Court finds those

allegations are sufficient to plausibly show the evidence could be exculpatory or potentially useful to the defense.[9]

Proceeding under the assumption that the video footage could be materially exculpatory or potentially useful to the defense, the allegations as to Officer George, while few, call into question his role in failing to preserve or otherwise destroying the hallway video, as they suggest he had access to and viewed the hallway video and he knew what was on the video before its destruction. At this stage, Plaintiffs are not required to explain exactly who destroyed the video or how the video was destroyed.

Nevertheless, Plaintiffs have failed to plausibly show an inability to obtain comparable evidence by other reasonably available means. The allegations in the Complaint indicate that the police and the Withrow administration viewed the hallway video. (Doc. 1, ¶ 94). Plaintiffs further allege that "all witness testimony, as well as Plaintiffs' testimony, verify th[e] contention" that the hallway video would show BW to be the aggressor towards Allen and CB. (Doc. 1, ¶ 95). Thus, even though the video has not been produced or preserved, Plaintiffs admittedly are able to obtain reasonably available evidence in the form of testimony from Officer George, the Withrow administration, and other eyewitnesses to the incident consistently confirming what would have been the contents of the hallway video. The failure to preserve or produce the hallway video therefore cannot plausibly rise to the level of a constitutional violation. *See, e.g.*, *Trombetta*, 467 U.S. at 490 (noting that even if breath samples may have been exculpatory in DUI case, the convicted individuals had alternative means of demonstrating their innocence

---

[9] Plaintiffs do not indicate that the evidence would have been exculpatory or potentially useful to the defense of Brunner. Based on Plaintiffs' allegations, the video footage appears to be unrelated to the incidents that gave rise to Brunner's conviction for trespassing such that it is unlikely to be potentially useful or exculpatory in regards to Brunner. If the video footage is not potentially useful or exculpatory, then Brunner would be unable to maintain a Section 1983 claim against Officer George. The Court nevertheless proceeds under the assumption that the video footage could be potentially useful or exculpatory to Brunner as well, given that the City Defendants have not raised this issue in their briefing.

including arguments as to malfunction, faulty calibration, operator error, such that the Due Process Clause was not violated). Given this analysis and Plaintiffs' lack of any substantive explanation as to why Officer George is not entitled to qualified immunity, Plaintiffs have failed to satisfy their burden. Accordingly, any Section 1983 claim for monetary damages against Officer George asserted in Counts I and VII must be dismissed.[10]

### 2. Ground 2: The *Heck* Doctrine

The City Defendants further argue that Counts I and VII of the Complaint, which are based upon 42 U.S.C. § 1983, should be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). (Doc. 6, pp. 5-6). They argue that Plaintiffs advance claims that if successful would imply the invalidity of the underlying convictions in state court in contravention to *Heck*. (Id.) According to the City Defendants, such claims cannot be sustained under *Heck* until Plaintiffs are able to demonstrate that the underlying convictions were reversed or declared invalid. (Id.)

In response, Plaintiffs argue that the claims asserted by them would not imply the invalidity of a conviction in state court because (a) there are no guarantees that a jury still would not have convicted Plaintiffs even with the video, and (b) they are claiming only that the Defendants lost or destroyed the video without explanation while it was in their possession. (Doc. 8, p. 6).

The City Defendants' reply is two-fold. First, they argue that Plaintiffs make inconsistent arguments, stating that the video footage is "exculpatory" but would not imply the invalidity of the convictions. They claim that this argument does not withstand scrutiny, as this case is similar to the claims alleged in *Heck* wherein the Supreme Court found the claims were barred. (Doc. 9,

---

[10] Although not argued by the City Defendants, it is noted that where "no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

pp. 1-2).  Second, the City Defendants argue that the conspiracy claim is subject to the same analysis, as Plaintiffs claim that the City Defendants "conspired *to convict* the Plaintiffs" by intentionally deleting materially exculpatory videotape footage, which necessarily would imply the invalidity of the state court convictions.  (Doc. 9, p. 2).

The *Heck* doctrine precludes an individual convicted of a crime from collaterally attacking his conviction through a Section 1983 claim.  *Heck*, 512 U.S. at 486-87.  As such, a Section 1983 claim generally is not cognizable where a ruling on the claim would imply the invalidity of the conviction that has not been reversed on direct appeal, expunged by executive order, declared invalid by a statute tribunal, or called into question by the issuance of a writ of habeas corpus.  *Id.*[11]

Here, Plaintiffs seek to maintain their Section 1983 claims based on the City Defendants' alleged constitutional violation stemming from their failure to preserve evidence that Plaintiffs contend is materially exculpatory or potentially useful to the defense of those convicted.  Courts consistently have recognized that a Section 1983 claim based upon the failure to preserve potentially exculpatory evidence necessarily implies the invalidity of the underlying conviction. *See Heck*, 512 U.S. at 489-90 (holding that prisoner's Section 1983 claim that the defendants, among other things, knowingly destroyed exculpatory evidence was not cognizable unless or until the conviction was invalidated); *Gravely v. Speranza*, 219 F. App'x 213, 215 (2d Cir. 2007) ("We agree . . . that [the] claim of failure to preserve evidence is barred by *Heck* . . ., as a judgment in his favor would necessarily imply the invalidity of his conviction for crimes committed during the events described above."); *Ickes v. Patterson*, No. 3:12-cv-1087, 2014 U.S. Dist. LEXIS 29714, at *9 (S.D. Ill. Feb. 5, 2014) (finding that plaintiff's argument that

---

[11] Although there may be some exceptions, the parties have not argued that any such exception may be applicable here.

defendants failed to preserve a videotape showing plaintiff was jumped and acted in self-defense would necessarily imply that his conviction was wrongful and thus was barred by *Heck*); *Bodle v. Linhardt*, No. 4:12-cv-03425, 2013 U.S. Dist. LEXIS 81421, at *18-19 (M.D. Pa. Apr. 8, 2013) (holding that claims based upon failure to preserve exculpatory evidence demonstrated the invalidity of the conviction and were barred by the favorable-termination rule of *Heck*); *James v. Atlanta City Police Dep't*, No. 05-3616, 2006 U.S. Dist. LEXIS 9453, at *2, *12-13 (D.N.J. Feb. 21, 2006) (claims for bad faith failure to preserve evidence under *Trombetta* and *Youngblood* were barred by *Heck*). Further, the argument that potentially exculpatory evidence was destroyed is, at its core, no different than an argument that the City Defendants failed to turn over evidence that may be subject to disclosure under *Brady*. *See Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) (intimating that the *Brady* obligation extends to police officers and discussing the standards imposed upon police officers to disclose evidence). The Sixth Circuit has recognized that a *Brady* violation "is a reversible error" and a suit seeking damages for such a violation "necessarily implies the invalidity of the underlying conviction." *Ruiz v. Hofbauer*, 325 F. App'x 427, 431 (6th Cir. 2009). Based on that authority, the Court finds Plaintiffs' Section 1983 claims necessarily would imply the invalidity of the convictions.[12]

The Court reaches the same conclusion in regards to Plaintiffs' claim that Defendants conspired to "*convict*" Plaintiffs in violation of Section 1983 by intentionally deleting the video footage, by filing purportedly frivolous motions, and by attempting to persuade CB to plead guilty. *Rogers v. City of Detroit*, 595 F. Supp. 2d 757, 767 (E.D. Mich. 2008) (citing relevant caselaw and holding that allegations that defendants conspired to fabricate evidence of a crime to

---

[12] To the extent Plaintiffs argue that the claim would not imply the invalidity of the conviction because the evidence is not materially exculpatory or potentially useful, the Court notes that in such a circumstance Plaintiffs would be unable to sustain the Section 1983 claim against the City Defendants for the additional reason that a constitutional violation for failure to preserve evidence cannot be sustained when the evidence is not materially exculpable or potentially useful to the defense.

justify a police shooting undermined the validity of the conviction and were barred by *Heck,* and citing relevant caselaw); *see also Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (success on plaintiff's claims that "the defendants unconstitutionally conspired to convict him of crimes he did not commit" would necessarily imply the invalidity of his conviction); *Jennings v. Machen*, No. 2:13-cv-796, 2013 U.S. Dist. LEXIS 152345, at *10-11 (W.D. Pa. Sept. 16, 2013) ("To the extent that Plaintiff is attempting to establish that Defendants conspired against him to bring an untimely criminal complaint, success in establishing such would necessarily render his conviction or sentence invalid.").

As Plaintiffs have not demonstrated that the state court convictions have been reversed on direct appeal, expunged by executive order, declared invalid by a statute tribunal, or called into question by the issuance of a writ of habeas corpus, the *Heck* doctrine applies to bar the claims for relief.

### 3.  Ground Three:  Failure to Allege a Civil Conspiracy

The City Defendants argue that the Count VII conspiracy claim fails for the additional reasons that (1) the Complaint contains only conclusory allegations as to conspiracy and thus does not state a claim for relief; and (2) no constitutional violation has been alleged.  (Doc. 6, p. 6).  In response, Plaintiffs argue only that specific facts are not necessary under *Twombly.*  (Doc. 8, p. 3).  To the extent Plaintiffs intended to argue this issue in a different section of their brief, that argument is simply that there is "plenty of evidence that a jury could infer that one or more of the Defendants worked together to erase the video evidence of the actual confrontation." (Doc. 8, p. 5).  The City Defendants reply that Plaintiffs have not opposed their argument that the conspiracy claim fails as a matter of law, and have set forth no facts about how the individual defendants shared a common objective. (Doc. 9).

"A civil conspiracy claim under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *see also Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012). To prevail on a civil conspiracy claim, a plaintiff must show that (1) a "single plan" existed, (2) the defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional or federal statutory rights, and (3) an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiffs. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985); *see also Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2011). Underlying those requirements is the requirement that the plaintiffs plausibly allege that a right secured by the Constitution or federal statute has been violated. *Trans Rail Am.*, 478 F. App'x at 988. Accordingly, "pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Here, Plaintiffs fail to satisfy the pleading requirements for a civil conspiracy claim. Construing the Complaint liberally in Plaintiffs' favor, Plaintiffs have merely described actions taken by various defendants in relation to one or more Plaintiffs involved in the February 7, 2013 incident or to the criminal charges resulting therefrom. Being involved in some aspects of a case that results in a conviction does not, however, automatically demonstrate that the parties had a mutual agreement, shared plan or engaged in any joint action. In this instance, no facts have been alleged as to when, how, or where the individual defendants reached an agreement or

14

shared plan, or how they engaged in any joint action, to violate Plaintiffs' civil rights.[13] Conclusory allegations that Defendants "conspired" or took actions in furtherance of a "conspiracy" are insufficient. *See Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) (affirming district court's grant of a motion to dismiss a civil conspiracy claim under Section 1983 where plaintiffs merely described actions taken by various individual defendants and asserted those actions were taken in furtherance of a conspiracy); *BPNC, Inc. v. Taft*, 147 F. App'x 525, 532 (6th Cir. 2005) (allegation that "[a]ll of the Defendants agreed and conspired to disrupt the business operations of BPNC and deny permits and licenses for BPNC" combined with allegations of conduct taken by the defendants was insufficient to suggests a single plan under which two or more defendants acted jointly); *Alexander v. City of Zanesville*, No. C2-07-405, 2008 U.S. Dist. LEXIS 116538, at *9-11 (S.D. Ohio July 12, 2008) (granting motion to dismiss because conclusory allegations, in the absence of supporting material facts concerning the single plan and involvement of the specific defendants, were insufficient to sustain a civil conspiracy claim under Section 1983). Plaintiffs thus have failed to sufficiently plead the civil conspiracy claim against the City Defendants.

Yet, even if Plaintiffs had set forth sufficient allegations as to a single plan in which the City Defendants shared in the unlawful conspiratorial objective, Plaintiffs still have failed to set forth a plausible claim for a civil conspiracy. A "claim for civil conspiracy under § 1983 exists only where the plaintiff has established a separate and actionable constitutional injury." *Rapp v. Dutcher*, No. 13-1286, 2014 U.S. App. LEXIS 3042, at *15 (6th Cir. 2014) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009)). In the present case, Plaintiffs' conspiracy claim primarily

---

[13] There also are no specific allegations that could plausibly connect Officer George to any conduct relating to the filing of motions or the advising of CB to plead guilty to the charges against her.

depends upon the viability of the constitutional claim for failure to preserve the hallway video footage. For the reasons explained previously, that constitutional claim does not withstand scrutiny. To the extent Plaintiffs' Complaint could plausibly be construed as asserting a violation of a right to counsel of one's choosing or the provision of advice of counsel, Plaintiffs have not specifically identified that constitutional violation in their Complaint. Nor have Plaintiffs set forth any factual allegations to connect the City Defendants to those actions, to show the City Defendants agreed to deprive Plaintiffs of such a constitutional right, or to plausibly show that any conduct engaged in by others rose to the level of a constitutional deprivation. (*See* Doc. 1, p. 24; Doc. 8, p. 3). Thus, even if Count VII was not barred under *Heck*, Plaintiffs' civil conspiracy claim against the City Defendants still would fail.

### B. Count III (Libel/Slander) and IV (Intentional Interference with Prospective Economic Advantage)

The City Defendants seek dismissal of Counts III and IV against them on the ground that they are entitled to immunity under Section 2744 of the Ohio Revised Code. (Doc. 6, p. 6). They contend that the investigation and arrest of Plaintiffs involved the provision of police services for which municipalities are entitled to immunity, and that Plaintiffs did not plead any exception to that immunity. (Doc. 6, pp. 6-7). They further argue that there are no factual allegations that show Officer George acted with malicious purpose, in bad faith, or in a wanton or reckless manner. (Id.)

In response, Plaintiffs contend that there is "plenty of evidence that a jury could infer that one or more of the Defendants worked together to erase the video evidence of the actual confrontation." (Doc. 8, p. 5). They further argue that Officer George admitted that he watched the video and told the media he did, and that other officials of Withrow and the Cincinnati Police watched the video. (Id.) Thus, they claim there is a jury question "about whether or not any of

the Defendants acted maliciously, in bad faith, or recklessly in conducting their investigations."
(Id.)

In their reply, the City Defendants argue that Plaintiffs have failed in their memorandum in opposition and otherwise to demonstrate that the City Defendants should be deprived of state tort immunity. (Doc. 9, p. 3). They further argue that the Complaint fails to set forth allegations showing that Officer George acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. (Doc. 9, pp. 3-4).

The Political Subdivision Tort Liability Act, as codified in Ohio Revised Code Chapter 2744, requires a three-tiered analysis to determine whether immunity is applicable. *See Cater v. City of Cleveland*, 83 Ohio St. 3d 24, 28 (1998). The first tier sets out a general rule that political actors are not liable for damages. Ohio Rev. Code. § 2744.02(A)(1). In the second tier, the Court must determine whether any of the five exceptions to the general rule of immunity is applicable. Ohio Rev. Code § 2744.02(B). The third tier of the analysis requires consideration of whether a defense to liability applies that restores immunity. Ohio Rev. Code §§ 2744.02(B)(1)(a)-(c), 2777.03.

### 1. City of Cincinnati

Plaintiffs do not contest Defendants' argument that the City of Cincinnati is presumptively immune from liability for damages, as it was engaged in the governmental function of providing police services. Ohio Rev. Code § 2744.01(C)(2). The question then becomes whether an exception to immunity exists. Here, Plaintiffs have not identified a single exception to the general immunity of the City of Cincinnati that they contend is applicable. (*See* Doc. 8). In the absence of an applicable exception, the City of Cincinnati is entitled to immunity under Chapter 2244 for the state claims asserted in Counts III and IV.

17

### 2.  Officer George

Individual defendants generally are immune from liability, unless their acts and omissions were "manifestly outside the scope of the employee's employment or official responsibilities" or were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6).  "Malice" is the "willful and intentional design to injure or harm another, usually seriously, through conduct that is unlawful or unjustified." *Otero v. Wood*, 316 F. Supp. 2d 612, 629 (S.D. Ohio 2004).  "Bad faith" includes a "dishonest purpose, conscious wrongdoing, or breach of a known duty through some ulterior motive."  *Id.*  "Wanton misconduct" is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result."  *Anderson v. City of Massillon*, 134 Ohio St. 3d 380, 388 (2012).  "Reckless conduct" is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct."  *Id.*

Here, Plaintiffs have not alleged that Officer George acted outside of his scope of employment.  Plaintiffs thus must have plausibly alleged that the actions of Officer George's that are relevant to the libel, slander, and intentional interference claims were taken with a malicious purpose, in bad faith, or in a wanton or reckless manner.

In the response in opposition, however, Plaintiffs fail to explain how Officer George acted maliciously or in bad faith with respect to making libelous or slanderous statements or with respect to intentional interference with economic relations.  Instead, Plaintiffs' argument is directed at Officer George's alleged malicious and wrongful conduct in relation to the destruction of the hallway video.  Any such conduct in relation to the destruction of the hallway video is, however, distinct from any statements or intentional interference.  His conduct in relation to the

18

video does not demonstrate that any statements or interference were malicious or in bad faith.. Plaintiffs cannot withstand dismissal by relying on conduct that is not directly pertinent to the claims at issue.

Even considering the allegations concerning Officer George's conduct in regards to libel, slander, and intentional interference, the Court concludes that Plaintiffs have not shown that Officer George should be deprived of state tort immunity. The allegations specific to Officer George are that he interrogated Allen and CB at the school and performed an incomplete investigation, he filed a complaint against Brunner, and he watched the hallway video and told the media about it. Also relevant are Plaintiffs' allegations that the hallway video would have shown BW to be the aggressor toward Allen and CB, Plaintiffs' allegations that "police" made statements to the media that portrayed Allen and her daughter as the initiators of the assault on BW,[14] the City Defendants' admission that Officer George filed a criminal complaint against Allen, and the fact that Allen ultimately was found guilty of assault by a jury and Brunner ultimately was found guilty of trespassing by the court. Considered together, those facts do not plausibly show that any statements made by Officer George or his bringing of charges against Allen or Brunner rose to or beyond the level of recklessness. Rather, the facts at best show only that Officer George acted with negligence in regards to any statements purportedly made by him or the filing of charges against Allen and Brunner. Officer George therefore is entitled to immunity under Chapter 2244 for the state tort claims asserted in Counts III and IV.

## IV.    CLAIMS AGAINST THE SCHOOL DEFENDANTS

Plaintiffs assert claims against Sharon Johnson, Cincinnati Board of Education and Withrow High School for destruction of evidence in violation of 42 U.S.C. § 1983 (Count I),

---

[14] According to the Complaint, several of the articles referencing "police" attribute the statements to Police Chief Craig, and not to Officer George. (Doc. 1, ¶¶ 100, 102). Two articles, however, generally attribute the statements to "police." (Doc. 1, ¶¶ 99, 101).

libel and slander (Count III), intentional interference with prospective economic advantage (Count IV), and conspiracy under 42 U.S.C. § 1983 (Count VII). (Doc. 1).[15] The School Defendants move for dismissal on all claims against them. For the reasons explained below, the Court concludes that all of the claims against the School Defendants should be dismissed.

### A. Count I (Destruction of Evidence) and Count VII (Conspiracy)

The School Defendants argue that they cannot be liable under Section 1983 because (1) there is no precedent to support holding a school constitutionally liable for failure to preserve evidence, and (2) the Complaint lacks any specific facts relating to the existence of a conspiracy. (Doc. 7, pp. 7-8).

Rather than explaining why those allegations are sufficient to serve as the basis for a civil rights violation, Plaintiffs argue that specific facts are not necessary under *Twombly*. (Doc. 8, pp. 3-4). As for the conspiracy claim, Plaintiffs may also have intended to apply their argument that there is "plenty of evidence that a jury could infer that one or more of the Defendants worked together to erase the video evidence of the actual confrontation." (Id. at 5).

In their reply, the School Defendants point out that Plaintiffs did not reply to their argument other than to argue the federal pleading standard. (Doc. 10, p. 2). They also indicate that Plaintiff has identified no facts in the Complaint linking the School Defendants and the police in a mutual plan to deprive Plaintiffs of their constitutional rights. (Id.)

### 1. Ground One: No Claim Against School Defendants Under Section 1983

As explained with respect to the City Defendants, a constitutional violation may occur when the police fail to preserve materially exculpatory or potentially useful evidence. The

---

[15] As previously noted, Count VII is mislabeled, as it actually is Count VI. However, to remain consistent with the Complaint, the Court refers to it throughout as Count VII.

School Defendants are correct, however, that Plaintiffs have pointed to no authority under which a constitutional violation occurs when a school district fails to preserve such evidence or turn such evidence over to the Plaintiffs.   Nor have Plaintiffs identified any other specific constitutional right the School Defendants allegedly violated.   As such, the Section 1983 claims in Count I and Count VII against the School Defendants must be dismissed.

Nevertheless, even if the School Defendants had the same constitutional obligation as the City Defendants to preserve evidence, the Section 1983 claims against the School Defendants still would fail for lack of a plausible constitutional violation, as explained above with respect to the City Defendants.

### 2.  Ground Two:  Lack of Facts Showing Existence of a Conspiracy

The School Defendants argue that the Count VII conspiracy claim fails for the additional reason that the Complaint contains only conclusory allegations as to conspiracy and thus does not state a claim for relief.  (Doc. 7, p. 9).  In response, Defendants argue only that specific facts are not necessary under *Twombly*.  (Doc. 8, p. 3).  To the extent Plaintiffs intended to argue this issue in a different section of their brief, that argument is simply that there is "plenty of evidence that a jury could infer that one or more of the Defendants worked together to erase the video evidence of the actual confrontation." (Doc. 8, p. 5).  The School Defendants reply that Plaintiffs have not opposed their argument that the conspiracy claim fails as a matter of law, and have set forth no facts about how the individual defendants acted jointly with a shared objective.  (Doc 10, p. 3).

The same conspiracy analysis set forth above with respect to the City Defendants is applicable here to the School Defendants.  Accordingly, the conspiracy claim against the School Defendants in Count VII shall be dismissed.

### C. Count III (Libel/Slander) and IV (Intentional Interference with Prospective Economic Advantage)

The School Defendants seek dismissal of Counts III and IV against them on the grounds that (1) they are entitled to immunity under Section 2744 of the Ohio Revised Code, and (2) Plaintiffs have otherwise failed to allege a claim for defamation or intentional interference. (Doc. 7, pp. 10-13).  They contend that they are presumptively entitled to immunity, and that Plaintiffs did not plead any exception to that immunity.  (Doc. 6, pp. 6-7).  They further argue that there are no factual allegations that show Principal Johnson acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.  (Id.)

In response, Plaintiffs contend that there is "plenty of evidence that a jury could infer that one or more of the Defendants worked together to erase the video evidence of the actual confrontation."  (Doc. 8, p. 5).  They further argue that officials from the School Defendants viewed the hallway video and then erased it without making a copy of it, which is enough to raise a jury question "about whether or not any of the Defendants acted maliciously, in bad faith, or recklessly in conducting their investigations."  (Id.)

In their reply, the School Defendants argue that Plaintiffs have failed in their memorandum in opposition and otherwise to demonstrate that School Defendants should be deprived of state tort immunity.  (Doc. 9, p. 3).  They further argue that Plaintiffs still have failed to demonstrate that their defamation and intentional interference claims could survive on the allegations contained in the Complaint.

The Political Subdivision Tort Liability Act, which the Court has previously explained, governs the analysis of the School Defendants' two grounds for dismissal.

### 1.  Ground One:  Immunity

#### a.  Board of Education and Withrow

22

Plaintiffs do not contest the School Defendants' argument that the Board of Education and Withrow are presumptively immune from liability for damages because they were engaged in a governmental function. Ohio Rev. Code § 2744.01(F) (including school districts within definition of "political subdivision"); Ohio Rev. Code § 2744.01(C)(1)-(2) (defining governmental functions and including "the provision of a system of public education" within the definition of "governmental function"); *Bucey v. Carlisle*, No. C-090252, 2010 Ohio App. LEXIS 1858 (1st Dist. May 21, 2010) (applying political subdivision immunity to the Cincinnati Board of Education and a CPS school). The question thus is whether an exception to immunity is applicable.

Here, Plaintiffs have not identified a single exception to the general immunity of the Board of Education and Withrow that they contend is applicable. (*See* Doc. 8).[16] In the absence of an applicable exception, the Board of Education and Withrow are entitled to immunity under Chapter 2244 for the state claims asserted in Counts III and IV.

### b. Principal Johnson

As explained previously, individual defendants generally are immune from liability, unless their acts and omissions were "manifestly outside the scope of the employee's employment or official responsibilities" or were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6).

Here, Plaintiffs have not alleged that Principal Johnson acted outside of her scope of employment. Plaintiffs therefore must have plausibly alleged that Principal Johnson took actions

---

[16] Further, the Board of Education and Withrow have set forth authority indicating that intentional torts such as those asserted here fall within the grant of immunity. *See Rid-All Exterminating Corp. v. Cuyhaoga Metro Hous. Auth.*, No. 98174, 2012 Ohio App. LEXIS 4438, at *4 (8th Dist. Nov. 1, 2012) ("[N]one of the exceptions to governmental immunity apply to defamation claims stemming from the performance of a governmental function, regardless of whether the defamation is alleged to be intentional or negligent."); *Allied Erecting Dismantling Co. v. City of Youngstown*, 151 Ohio App. 3d 16, (7th Dist. 2002) ("tortious interference with a contract fall[s] within the general grant of immunity found in R.C. 2744.02(A)(1)").

with malicious purpose, in bad faith, or in a wanton or reckless manner.  The only allegation specific to Principal Johnson is that she made efforts to recover the hallway video footage. There are no allegations from which it may plausibly be inferred that Principal Johnson made any statements at all, much less any statements that could be considered reckless, malicious, or in bad faith.  Further, the intentional interference claim is based upon the bringing of charges and the making of accusations about Plaintiffs, but the Complaint contains no allegation that plausibly suggests that Principal Johnson was involved in bringing charges or making any accusations.  Even construing the Complaint liberally, the allegations do not plausibly show that Principal Johnson engaged in any conduct germane to a claim for libel, slander, or intentional interference that could be considered malicious, in bad faith, wanton or reckless.[17]  Principal Johnson therefore is entitled to immunity under Chapter 2244 for the state tort claims asserted in Counts III and IV.

### 2.  Ground Two: Failure to State a Claim for Relief

Although it is unnecessary to proceed given the above conclusions, the Court will address the School Defendants' additional arguments that the libel and slander claim in Count III and the intentional interference claim in Count IV should be dismissed for failure to plead sufficient facts to plausibly satisfy the requisite elements.

#### a.  Libel/Slander

To state a claim for libel or slander, Plaintiffs must plead (1) a false statement (2) about the plaintiff (3) was published without privilege to a third party (4) with fault or at least negligence on the part of the defendant and that (5) the statement qualifies as defamatory per se

---

[17] As explained with respect to Officer George, Plaintiffs' suggestion that Principal Johnson somehow was involved in destroying the videotape is not pertinent to a determination of whether she engaged in at least reckless conduct relating to the specific state claims asserted.

or caused special harm to the plaintiff.  *McPeek v. Leetonia Italian-American Club*, 174 Ohio App. 3d 380, 384 (7th Dist. 2007).

Here, Plaintiffs' Complaint does not identify or even plausibly suggest that the School Defendants made or published any statement concerning Plaintiffs.  Plaintiffs allege vaguely and generally that "Defendants" "used language" tending to harm the reputation of Plaintiffs (*see* Doc. 1, ¶ 177), but they cite to media articles in the fact section that identify only the *police*, and not any of the School Defendants, as the sources of information for the media (*see* Doc. 1, ¶¶ 99-102).  There is not a single factual allegation as to any statement purportedly made by the School Defendants about Plaintiffs so as to provide the requisite notice as to the basis for the claim against them.  Plaintiffs thus have not pled basic facts that would entitle them to relief against the School Defendants under Count III of the Complaint.  *See Schmidt v. Northcoast Behavioral Healthcare*, No. 10AP-656, 2011 Ohio App. LEXIS 662, at *4-5 (Franklin App. Feb. 22, 2011) (finding allegations that defendant defamed and abused plaintiff failed to set forth operative facts showing the basis for the claim, such that dismissal under Rule 12(b)(6) was appropriate); *Thompson v. Stealth Investigations, Inc.*, No. 2009 CA 86, 2010 Ohio App. LEXIS 2323, at *4 (Clark App. June 18, 2010) (granting motion to dismiss defamation claim where complaint contained no allegations that the defendant made any false statements regarding the plaintiff); *Gilreath v. Plumbers, Pipefitters & Serv. Technicians Local 502*, No. 1:09-cv-628, 2011 U.S. Dist. LEXIS 36645, at *10-11 (S.D. Ohio Mar. 31, 2011) (granting motion for judgment on the pleadings where plaintiff failed to allege any statements made by the defendant or its employees).

b.  Intentional Interference

To state a claim for intentional interference with a prospective economic advantage, the Plaintiffs must show (a) the existence of a business relationship, (2) the defendant's knowledge thereof, (3) the defendant's intentional interference causing a termination of the relationship, and (4) damages resulting from the termination. *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 604 (3d Dist. 2002). The School Defendants claim that Plaintiffs' assertion that they lost their jobs was insufficient to show that the School Defendants had knowledge of their employment or that they engaged in any action to cause them to lose their employment. They cite to the Complaint, which indicates that Allen and Brunner lost their jobs "based upon these false charges and negative publicity," arguing that the School Defendants were not responsible for the filing the charges or making any statements to the media. Plaintiffs do not respond to this argument in their opposition brief.

The Court finds the School Defendants' argument to be well taken. Plaintiffs identify the charges and the accusations as the basis for their intentional interference claim. There is nothing in the Complaint from which the Court could reasonably infer that the School Defendants brought the charges or made any accusations against Plaintiffs. Mere speculation is not sufficient to withstand dismissal. Accordingly, the intentional interference claim in Count IV against the School Defendants shall be dismissed.

## IV.    <u>CONCLUSION</u>

Consistent with the foregoing, the Court hereby **GRANTS** the City Defendants' Motion to Dismiss (Doc. 6) and the School Defendants' Motion to Dismiss (Doc. 7). It is therefore **ORDERED** that all claims against the City Defendants and the School Defendants are **DISMISSED**.

The only claims remaining in this action are those asserted against BW, a minor, and John and Jane Does, who have yet to be identified. Although Plaintiffs initiated this action on May 14, 2013, it is not clear that service has been perfected on BW, no counsel has entered an appearance on behalf of BW, BW has not moved, answered or otherwise pled in response to Plaintiffs' Complaint, and Plaintiffs have failed to make any effort to litigate this case against BW or the John and Jane Does since filing their Complaint. While default judgment against BW may be appropriate, dismissal of the claims against BW and the John and Jane Does for failure to serve under Fed. R. Civ. P. 4(m) or failure to prosecute under Fed. R. Civ. P. 41 also may be warranted. Accordingly, Plaintiffs are hereby **ORDERED** to **SHOW CAUSE** within **TWENTY (20) DAYS** of this Opinion and Order as to why the action against BW and the John and Jane Does should not be dismissed pursuant to Fed. R. Civ. P. 4(m) or Fed. R. Civ. P. 41. The failure to comply with the terms of the show cause order may result in the dismissal of all remaining claims in this action.

**IT IS SO ORDERED**.

s/Michael R. Barrett
MICHAEL R. BARRETT, JUDGE
UNITED STATES DISTRICT COURT